May it please the court. My name is Jay Murrell. I represent the remaining sheriff's office defendants, Sheriff Hale, Captain Eddings, and a deputy I'm going to refer to as Deputy Duke. This case is about the district court's decision to deny a motion to dismiss based on qualified immunity with respect to three 1983 claims. Excessive force claim against Deputy Duke and two supervisory liability claims against Sheriff Hale and Captain Eddings. One for other for deliberate indifference to serious medical needs. I'd like to start by talking about the excessive force claim against Deputy Duke. That claim only involves Deputy Duke's second use of his taser. In the appellate's brief it talks about the first use of the taser not being a constitutional violation. So we're only analyzing the second use of the taser. Can I get the timeline straight on the second use of the taser? So do I understand correctly it hits him in the left side of the chest initially then five seconds later Hinkle falls to the floor and wets himself. Then the Deputy Duke, I appreciate that by the way, Deputy Duke orders Hinkle to roll over, doesn't move, and then eight seconds later hits him again. That's correct. So is that eight seconds from first shot to second shot or are we really talking about 13 seconds and change from first shot to second shot? According to the complaint it was eight seconds between the tasings. Got it. So tase, fall, urinate, unresponsive, tase again. And it's clear in the complaint he did not respond to the order. The complaint did not say he could not respond to the order. Although whether did not, could not, I mean was he still resisting at that point? Whether it's didn't or couldn't, was he resisting? Well at that point he did not obey an order to roll over to be handcuffed and it's factored to what he had done according to the complaint seconds beforehand when he had run from another deputy and pulled away from Deputy Duke and the other deputy three times in their effort to grab him. And all of this takes place over a roughly three minute span of time beginning when Deputy Duke did not see the inmate on the video monitor and ending when the nursing staff is called three minutes later after the second tase. So it's a tense, uncertain, rapidly evolving situation. Something that's not clearly over until the second tase. Although all of the activity that you describe happens pre-first tase, right? Once he's tased the first time there's no more activity except him wetting himself. Wetting himself and then not responding to the order to roll over to be handcuffed. And the order to be rolled roll over to be handcuffed is done after what he had just done with respect to their attempts to physically grab him. And do you think especially at 12b6 that it's a reasonable inference that him having wet himself, which I'll assume is an involuntary bodily function, you can move from didn't respond to couldn't respond? Couldn't hold his, couldn't hold his Sure. I think the inference at that point can't cut against what's alleged in the complaint. The complaint does not allege that Deputy Duke knew that he could not respond to that order. The complaint does not allege again that he could not respond. So we're factoring based on what Deputy Duke knew and what he knew according to the complaint was that he did not respond to the order. So the second tasing is done in an effort to get him to comply with that order. And again, it's happening in a very rapid succession. The district court looked at it from the standpoint of that it was clearly established that you could not use continuous use of force on an inmate who had clearly stopped resisting. Based on these allegations, the resistance was not clearly over when the second tasing was done because he's still unrestrained and the effort to get him to roll over to be strained had not been complied with. The case law that talks about the clearly established not being able to use continuous force on an inmate who's clearly stopped resisting deals with situations where inmates had stopped resisting minutes before the force was used or in situations where the suspect or inmate had not resisted at any point during the encounter with law enforcement. That's not what we have going on here. That's not what these allegations say. We have an unbroken chain of events that happens in very rapid succession and no case has been cited and I'm not aware of any case from the 11th Circuit which has held that that use of force compressed into roughly an eight second time frame is somehow unconstitutional when you have an inmate who is not restrained and who in the effort to get him to roll over to be restrained is not complied with. The Supreme Court in Kingsley v. Henderson talked about how force is only excessive if it's objectively unreasonable and it listed factors that can be used to determine whether or not that force is objectively unreasonable. The district court and the plaintiff did not analyze the force under those factors. We did in our brief and it's submitted. What we are left with is a tense uncertain situation where the deputy is having to make split-second judgments and Kingsley recognizes that. Recognizes that law enforcement is going to have to make a split-second judgment in a situation when imbued with the 2020 vision of hindsight might look different than it looked on the scene. Well you know this tense uncertain all that you know a lot of times that involves firearms and knives you know the guy flailing away at the officers trying to jerk away I mean here you've got a clearly an unarmed man you've got two guards he's not about to punch out the two told told one of the deputies deputy Cohen who's no longer in the case that he wanted to die they were making efforts to move him to a padded cell so you've got a inmate who after that point runs away he is a danger at that point he's a security situation at that point it's a situation that is not resolved and certainly trying to get on top of an inmate at that point with a taser in your but to the deputies themselves that is a situation that is classically tense after the first tase now Hinkle is laying on the ground right correct on his side your honor that means he can still kick he can still fight he is not restrained and that is the security issue and that is the issue why he needed to be restrained at that point which is why deputy Duke did not follow the first tase by immediately tasing again he told him to roll over to be handcuffed so they would avoid any further injury any further disturbance should I should I be unbothered by the fact that the man wet himself I mean it just seems to me that is pretty powerful evidence that he has lost control of his ability to do much of anything your honor alleged that he did not become unresponsive i.e. unable to respond until after the second tasing we're based on allegations at this point where deputy Duke is not alleged to have known that he could not respond to that order and again a situation that's ongoing and deputy Duke may have made a mistake in his recognition of what was going on but qualified immunity still covers the mistaken judgment let me ask you about the Eddings and Hale because the district also denied qualified immunity to them yes do you have any thought one way or the other on the proper variety of that I do your honor the allegation in that part of the complaint is not that they personally participated in any aspect of what happened to this particular inmate they are sued as supervisory officials based on policies or customs enacted at the Birmingham jail with a slight difference that with respect to the deliberate indifference claim there's also an allegation that the portable defibrillator was not kept with pads as to the policies and custom allegations the allegations are that the jail had inadequate policies regarding use of force and inadequate policies regarding medical care but the complaint doesn't contain any allegations about what happened to any other inmate in any other situation except for this inmate and this situation and the 11th circuit has said that to show a policy or custom you must show a persistent widespread practice that's not shown here because there's no allegation about any other inmate no allegation about any prior conduct no allegation of any facts which would show Sheriff Hale and Captain Eddings were aware their policies were inadequate and that those inadequate policies were leading to constitutional violations as to the issue about the deportable defibrillator plaintiff cites no case and I am not aware of any case that has held that having an inoperable piece of medical equipment has been clearly established to be a constitutional violation I'm not aware of one that has found it to be a constitutional violation period beyond that the complaint clearly alleges that after Mr. Hinkle was tased nursing staff was called CPR was formed there's no constitutional right to having a person a poor defibrillator but beyond that he got medical care after the tasing I'm happy to answer any questions otherwise I'll speak in rebuttal Mr. Wills My name is Todd Willis and we're here today because on September 13, 2014 Ricky Hinkle died in a pool of his own urine at the Jefferson County Jail in Birmingham, Alabama after being tased a second time he was deprived of his medication he was deprived of treatment for his addiction to alcohol and as a result of that deprivation and him being tased he was killed now is there any allegation in the complaint I've forgotten in which there's an indication they knew about the medication that he's supposed to have and deprived him of it yes sir when he was arrested he was taken to what was he arrested for I don't think the complaint says I believe public intoxication he was drunk he was taken to Jefferson County Jail in Bessemer which is another city just to the west of Birmingham during his the time that he was processed into the jail they do a medical intake form during that time Mr. Hinkle advised him you know I have I'm an alcoholic I have a problem with alcohol and I have a problem with some mental health problems and I take amitriptyline for those issues so they were aware at the time that he was cycled into the Birmingham County Jefferson County Jail on the day one on September 9th I believe that he was supposed to be taking amitriptyline the next day he was transferred to downtown facility which is in Birmingham there are three claims the excessive force claim the supervisory liability claim against Sheriff Hale and the captain that was run in the jail and then the supervisory liability claim against Sheriff Hale and Captain Eddings for the deliberate indifference to Mr. Hinkle's medical needs now the issue before the court today is simple whether the appellee alleged sufficient facts to proceed at this stage at the rule 12b6 stage to overcome qualified immunity we must allege there was a constitutional violation and the constitutional right was clearly established so let me ask you I think I've probably been I try to be transparent I think I've been pretty transparent with your opponent about the thing about his case that the about this case that bothers me from his perspective the thing that bothers me about it from your perspective is that we're charged under Kingsley with looking at six different factors right balancing six factors to determine whether or not this force was excessive and it is a little hard for me to get my head around the notion that a deputy deputy duke in the context of an evolving situation however rapidly or or not but an evolving situation are we supposed to imagine that he sort of works his way through the six factors and determines that yeah excessive for air force is appropriate here or isn't that just seems a little fantastical to me I think we're getting some guidance by several different other cases in the 11th circuit court I stand before you as a former agent with the Alabama Bureau of Investigation so I am uniquely situated to address use of force issues I would offer if you were to lay your hand on that counter up there and I took a hammer and hit your finger and then I wait eight seconds and I hit your finger again with a hammer does that constitute an unbroken chain of events I say no in this case deputy duke tased a half-naked inmate who had on a pair of underwear and had a shower curtain in his hand he tased him as a result of that first tasing he became incapacitated he urinated on himself was laying on the floor not moving he couldn't respond they he didn't respond so we tased him again how could he respond he had lost control of his faculties so your point as to my Kingsley question is sort of never mind the six factors the doctrine this is one of those sort of obvious clarity cases the way we describe them an obvious clarity case everybody knows that once you've tased a guy and he's lying in a pool of his own urine you can't wait eight seconds and then just decide to tase him again yes I believe that's absolutely correct and Judge Toflat wrote an opinion in Fields versus City of Aventura that addresses a very similar issue where a police officer tased an individual the individual becomes incapacitated on the ground the police officer approaches him after the guy has given it he's laying on the ground not resisting he tases him again and the court held in that case that tasering an individual who is not resisting is not protected by qualified immunity and that's in the Fields versus City of Aventura 647 Fed 3rd 1272 in Danley v Allen once a prisoner has stopped resisting there is no longer a need for force here's the detail found unconfirmed constitutional violation where a jailer used pepper spray against an incapacitated inmate I think it doesn't matter what uh whether it's pepper spray whether it's a baton whether it's a taser whether it's a firearm if a if a law enforcement officer if a deputy sheriff strikes an individual to regain to establish control that individual gives up and is unresponsive it is unreasonable and a constitutional violation for that police officer or deputy sheriff eight seconds later to strike him again or spray him again or shoot him again so do you let me ask you this because I was going to ask your adversary the same question we've got cases I was looking at a case in my notes called glass socks versus Argo a recent case summarizing earlier cases together it says Smith versus Maddox and Oliver versus Fiorino clearly established that the repeated tasing of a subdued arrestee who has ceased any resistance or threatening conduct is excessive force but I think I heard him say sort of in anticipation imagining that I might be asking that question to say yeah yeah yeah but those cases are where the guy is non-resistant for minutes it's not just eight seconds he says those are cases where the guy I don't know I don't remember the facts of the cases but he's out um compliant for minutes and this is different because here you know eight seconds it is long the dramatic pause here but it's not as long as minutes what do you say to that what I say to that is did uh Deputy Duke or the other deputy as Mr. Hinkle is laying on the floor in a pool of his own urine motionless is there a threat to them when he's laying there motionless whether it's for two seconds or five seconds or eight seconds or two minutes there is no longer a threat to those deputy sheriffs as he's laying there motionless in a pool of his own urine so you think really if this were a two second case would be the same case I don't know sir I that of two seconds but eight seconds a trained law enforcement officer a deputy sheriff who's been trained and been through a taser program he understands and has been trained on the law he understands you cannot tase an inmate that is not resisting and we think it's a clear case of that was he resisting by simply not carrying out his command to roll over to be handcuffed is that kind of resisting well that's the argument that the defendants are making sir uh judge and we would uh in response to that we would say was he capable of responding was he capable was physically was the observation that was being made by the deputy he had lost control of his ability he couldn't pee on himself after he got tased did he have the ability to move did he have the ability to even understand what's being told him as he's giving orders roll over show it give us your hands did he even have the capacity did they give him enough time to comply after being tased and I think the total in uh judge newsome was very astute I think when he was tased there's a five second cycle he's tased for five seconds electricity sent through his body then there's an eight second pause until he's tased again so from the beginning of the first tase to the beginning of the second tase was 13 seconds well I thought your opposing counsel said no it was only eight seconds between the two tasings yes sir between the two cases there are eight seconds between the end of the first and the beginning of the second so the first tase is for five seconds like this I mean maybe I'm not doing a very good taste but this is how I imagine it happening I believe that's probably pretty accurate I think five seconds of you know you're being shot for five seconds the electricity terminates then there's an eight second pause during those eight seconds he had fallen to the ground he had urinated on himself and he's just laying there motionless on the ground motionless and then they tase him again we think that constitutes a violation of his constitutional rights and the district court found that as well what's your position about Eddings and Hale I mean are there are no other instances of alleged excessive force or deliberate indifference are there in your complaint no sir not in our complaint now the defense counsel said policy or custom one way to prove it is a policy or custom of this type of behavior this type of ongoing pattern in practice there's another way that you can show it and that's through a causal connection between the supervisor's actions and the constitutional deprivation now I'm referring to Matthews v Crosby now the constitute the casual connection rule can be established when it's alleged that a supervisor's customer policy results in deliberate indifference to constitutional rights and that's out of the Matthews v Crosby case here the district court found that we alleged that the appellee alleged in detailed factual predicate that a hailing eddings failed to create adopt and implement rules regarding appropriate use of force being that that failure constitutes a deliberate indifference to consequences of excessive force and seeing Mr. Hinkle's death was foreseeable of that as a result of that failure to adopt those policy procedures so we can survive at this stage by alleging that that causal connection between the acts that took place and the failure to institute or implement those policies or procedures to prevent that so so I thought for custom or policy liability you had to show incidents not involving this specific person like it's not like a lot of stuff that happened to this guy it's like this has happened before to other people and thus these people the the supervisors were on notice and it seems like here all of the allegations are about your guy well we believe at the at the motion to dismiss stage your honor that the causal connection argument that we made and the way that we pled it in the complaint gets us over that hurdle at the 12b stage well you it's on summary judgment probably you'd lose the point if there were no other episodes yes sir if the double tasing thing would turn out to be not policy at all yes sir we believe we should be allowed to do discovery on it and see if we can proceed on that claim although I must say that it struck me that the district court's analysis of the supervisory liability issue of Hale and Eddings is relatively weak it's all in one paragraph on page five that's it I mean he didn't do any extensive analysis at all on that point okay and I'm under the third claim of supervisory liability claim against Sheriff Hale and Captain Eddings for the deliberate indifference to medical needs the analysis here that we allege that Mr. Hinkle was deprived of amitriptyline which I think that's he was Mr. Hinkle was deprived of treatment for alcohol withdrawal which is a clear constitutional violation many many cases in the 11th circuit hold that Mr. Hinkle was deprived of an AED and your argument your argument is you alleged enough to show that that that was the not to give any medication I suppose rather than these specific items the policy would have to be we just don't medicate uh alcoholics it appears that would be the policy sir of course he didn't deny the medication for five days and that's what caused him to die I mean you know the but the medication was not the cause of his death it was presumably the tasing and cardiac arrest resulting from that well judge we allege that as a result of him being withheld the amitriptyline he began having some type of episode and I think that the allegations are that uh he began being loud and boisterous and would not cooperate with the deputies there wasn't a history of him doing that in the four or five days he had been incarcerated it just started uh we believe with we can show that the with by withholding the amitriptyline he began acting in a manner he wouldn't have if he'd had his medication the complaint doesn't allege that he was deprived one way or the other about the medication up to this episode does it yes sir that's that's correct it's just silent I mean the argument the allegation is they don't medicate alcoholics that's basically what your point is it well no they didn't medicate Mr. Hinkle and they didn't but to further the rule is an official acts with deliberate indifference when he intentionally delays providing an inmate with access to medical treatment knowing that the inmate has a life-threatening condition or an urgent medical condition that would be exacerbated by delay that's from the Bozeman v Oram case here we know Mr. Hinkle suffered from alcoholism we know he was on medication for depression the amitriptyline he began exhibiting delusional behavior immediately before this event with Deputy Duke and as after he got tased there were no AED pads at the facility jail officials did nothing now in the Lancaster v Monroe County case clearly the 11th circuit found it fair to provide medical treatment to an inmate going through alcohol withdrawal was a deliberate indifference to a serious medical need and clearly established a constitutional violation I think we have your point briefly your honors the comparison was made or attempted to be made between the event involving Deputy Duke and certain other cases I think Phil's Danley and Pearson in Phil's it was a situation where there was no alleged resistance at all at any point during the encounter during Danley that was the situation where an inmate was pepper sprayed the pepper spray itself was found to be constitutional the problem was leaving the inmate in I guess a cell ventilated cell for 20 minutes after that and not allowing the inmate to shower off that was the constitutional violation that was the force which is an unpublished opinion from the 11th circuit the inmate was hit with a 60 second blast of pepper spray the inmate passes out for five minutes he wakes up he tells the guard I'm having trouble breathing he's incoherent the guard responds by popping him again with another 60 second blast of pepper spray totally different situation than what's alleged to have happened here in terms of the policies at the jail the allegation was not that there was a policy of not providing care for alcoholics or not providing medication to alcoholics the complaint said the decision to deny those things was based on inadequate jailer training poorly trained corrections officers making treatment decisions or other inadequacies in the policy there was no affirmative policy alleged to prohibit those things which gets us back to you have to be able to show at least in terms of the causal connection more than just this particular incident you've got to show that it was occurring at least with some degree of regularity so I have a question about that even even though I'm the one that sort of threw this stink bomb into the room how exactly would a plaintiff be able to make that showing in a complaint without discovery I mean how could you even allege that consistent with just word of mouth kind of grapevine yeah at this point I don't think you can make that allegation but of course the way the case will unfold there are multiple defendants in this case some of whom have not been let go some of whom are still in the case after the case is ongoing you can certainly send a subpoena request to the sheriff's office for certain information no I guess what I mean is you won this case at 12b6 and in part you're saying on the supervisory liability claims it was right that we won because the plaintiffs couldn't show as to custom and policy that this had happened a bunch of times before it's not just their guy and I'm just wondering how would they know to allege multiple incidents without discovery well certainly pre-discovery investigation that's what appears to happen in the cases where there are allegations where you have allegations of multiple complaints or they're basing it on previous lawsuits against the particular entity where the entity was found who had violated what they do pre-discuss how would they discover prior to the lawsuit well grapevine or chain of well I mean in those cases your honor where they're alleged well it would seem to me let's assume that they made a flat-out allegation there was a policy of not medicating alcoholics flat out I would think for purposes of 12b6 you would need to show other episodes than violent alcoholics correct your honor they just blame they might not be able to prove it but that's right well and they would say that in this case the policy was executed they didn't do a thing correct right but at this point your honor we think the sheriff's defendants are entitled to qualified immunity based on these allegations the district court's decision should be reversed thank you thank you court will be adjourned under the usual order